BK4353PG0279

### EXHIBIT A

The following described land and premises, situated in the State of Maryland, Calvert County, and known and distinguished as:

Lots numbered 93, 94, 95, in Block numbered 26, of the Subdivision known as Randle Cliffs Beach, formerly known as Summer City, as per plat thereof recorded among the Land Records of Calvert County, Maryland in Liber G.W.D. No. 9, folio 149, and Lot numbered 98, Block numbered 26, of the Subdivision known as Randle Cliffs Beach, formerly known as Summer City, as per plat thereof recorded among the aforesaid Land Records in Liber A.A.H. No. 9, folio 279.

And Lots numbered 96 and 97, in Block numbered 26, of the Subdivision known as Randle Cliffs Beach and formerly known as Summer city as per plat thereof recorded among the Land Records aforesaid in Liber G.W.D. No. 9, folio 149.

This being the same property conveyed to WAYNE MAURICE ESTEP AND LORRAINE S. ESTEP, HIS WIFE, dated 04/06/1984 and recorded on 04/23/1984 in Book 316, Page 268, in the CALVERT County Recorders Office.

PARCEL: 03-037223

1359346   Form # 1302
Address :6421 BAYSIDE RD, CHESAPEAKE BEACH,MD

BBT Confidential

# BB&T HOME EQUITY LINE AGREEMENT & INITIAL DISCLOSURE STATEMENT

BRANCH BANKING & TRUST COMPANY, 200 WEST SECOND STREET, WINSTON-SALEM, NORTH CAROLINA, 27101

| BORROWER(S) NAME | MAXIMUM CREDIT LIMIT | DATE | ACCOUNT NUMBER |
|---|---|---|---|
| WAYNE MAURICE ESTEP | $ 30,000.00 | 02/25/2014 | |
| LORRAINE S ESTEP | | | |

The Annual Interest Rate is based on the Wall Street Journal
Prime Rate (the Index) + .................................................. 1.000 %
The initial ANNUAL PERCENTAGE RATE (Index + margin) is .......... 4.250 %
The Minimum ANNUAL PERCENTAGE RATE is ........................... 3.25 %
The Initial Daily Periodic Rate is ................................... .012 %
The Initial FINANCE CHARGE for flood fee $........................... 5.60
Minimum Monthly Payment:
The Minimum Monthly Payment required for each billing cycle will equal:

[X] Interest-Only Payments: The Finance Charges that accrued on the Outstanding Principal Balance during the preceding billing cycle, or $20.00, whichever is greater.

[ ] 1.50% of Outstanding Principal Balance: 1.50% of the Outstanding Principal Balance, or $20.00, whichever is greater.

[ ] Fixed Payment Amount A fixed payment of $_____, which amount must equal or exceed 1.50% of the Maximum Credit Limit.

Due Date:
Payments will be due on or before the due date shown on my periodic statement.
Other Charges:
  Attorney Fees ........................... $ 145.00
  Appraisal Fees .......................... $ _____
  Recording Fees .......................... $ 60.00
  Other: .................................. $ _____
  Other: City/County Tax/Stamps ........... $ 300.00

Security: I am giving a security interest in real estate or real property located at:
6421 BAYSIDE RD
CHESAPEAKE BEACH, MD 20732-4407

1. Definitions. In this Agreement and Initial Disclosure Statement (hereafter "Agreement"):
(a) "I," "me," "we," "my," "our," "mine" and "us" mean each of and all of those who sign an application for credit under the Agreement.
(b) "You," "your" and "Bank" mean Branch Banking & Trust Co.
(c) "Advance" means any loan or extension of credit I obtain from you under this Agreement.
(d) "Credit Available" means the difference between my Outstanding Balance and the Maximum Credit Limit you approve for me from time to time.
(e) "Checks" mean special checks you issue to me or any other means I use of drawing Advances under this Plan.
(f) "Maximum Credit Limit" means the total dollar amount you approve against which I may get Advances under this Plan.
(g) "Outstanding Balance" means the total balance I owe you from time to time under this Plan.
(h) "Outstanding Principal Balance" means the Outstanding Balance less any finance charges, fees or insurance charges.
(i) "Plan" means the BB&T Home Equity Line Plan established and governed by this Agreement.
(j) "Account" means the Account on your books that records the Advances I get from you and also all Finance and other charges you impose from time to time.
(k) "Billing Cycle" is the period beginning on the day after the closing date of my last monthly periodic statement and ending on the closing date of my next monthly periodic statement.
(l) "Daily Periodic Rate" means the rate of change determined by dividing the applicable Annual Percentage Rate by the actual number of days in the year in which the determination is being made.

2. Agreement. You may establish in my name an Account for use by me to obtain loans of money (Advances) from time to time from you to be charged to my Account. The terms and conditions of use of the Account and for the repayment of any amount or amounts borrowed shall be according to this Agreement. I hereby acknowledge that I have received and read this Agreement and agree to all the terms and conditions included on the front and back hereof. I also acknowledge receipt of a separate disclosure and home equity brochure prior to or at the time of making application. I agree to furnish you information sufficient to verify my identity as required under the USA Patriot Act.

3. Maximum Credit Limit. My Maximum Credit Limit ("Limit") for this Account as established by you is that set forth in the heading of this Agreement. I agree never to allow my Outstanding Balance to exceed the Limit. At any time that my Outstanding Balance is in excess of my Limit, I agree upon your demand, to repay to you all amounts you have advanced in excess of my Credit Available.

4. Agreement to Pay. I agree to repay all my obligations under this Agreement including all finance and other charges that apply as set forth in this Agreement.

5. Advances. This Plan allows me to obtain credit extensions from you from time to time by requesting Advances within my Credit Available, using the special checks you issue to me. I also authorize the Bank to make Advances upon instruction of any individual using a correct account name, account number, and security code or other type of confidential identification number, or other information the Bank has on file about me, my Account or other authorized signer on my Account, and whether given orally, by telephone, in person, in writing, through ATMs, Phone Teller 24 or by call to a BB&T branch. I

acknowledge that the Bank has no method to determine whether a transaction conducted with the use of a valid account name, account number and security code or other information which the Bank has on file about me or my Account is proper and therefore authorize the Bank to complete any such transaction in which the Bank receives such identifying information. I may authorize an automatic deposit in the actual amount needed to cover my overdrafts for the current business day (or the unused portion of the Credit Limit if less than actual amount needed to cover my overdrafts for the current business day) to any checking account I specify when the checking account is overdrawn (I will specify the BB&T Checking Accounts to be used with my Account). I understand that any of these requests represent a request for an Advance when presented to you for payment or transfer. I may not request an Advance in excess of any Credit Available. The provisions of the BB&T Bank Services Agreement are incorporated by reference in this Agreement. I acknowledge receipt of said Agreement.

6. Crediting of Payments. You will credit my payments on the date you receive them, except for payments of $5,000 or more. For these payments, you will delay crediting of payment for up to three (3) business days, but the delay will not result in a finance or other charge being imposed.

7. Forged or Unauthorized Transactions.
Duty to Safeguard Account. I have a duty to safeguard access to my Account (including any credit accounts), account information, checks, signature stamps, account security codes, passwords, or personal identification numbers ("PIN") and personal identification (hereafter confidential information) and agree to keep same confidential. I agree to report any lost or stolen checks, any unauthorized transaction on my Account, or theft of confidential information immediately upon discovery. If I

ASSUMPTION NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT THE REAL ESTATE SECURING THE DEBT IS SOLD, CONVEYED OR OTHERWISE TRANSFERRED.

Insurance Products are
• Not a deposit or other obligations of, or guaranteed by BB&T or its affiliates.
• Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by BB&T or its affiliates.
• If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

Property Insurance - I may obtain property insurance from anyone I desire that is acceptable to you. If I obtain property insurance from BB&T, I will pay the premium shown below. No insurance is provided unless the premium is shown.
I want property insurance from BB&T at a cost of $_____ for a term of _____ months.

Draft Authorization - Please debit my Account # _____ for my minimum periodic payment each time it is due. _____
Borrower's or Co-Borrower's Signature

Overdraft Protection - I request that the following BB&T Checking Accounts be provided with automatic deposits to cover overdrafts. I understand that I will be individually liable for all Advances made to these Checking Accounts.

HAVING FIRST READ THIS AGREEMENT, EACH OF THE UNDERSIGNED AGREES TO ALL THE TERMS AND CONDITIONS INCLUDED ON THE FRONT AND BACK HEREOF AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE HOME EQUITY BROCHURE, AND APPROPRIATE NOTICES OF THE THREE-DAY RIGHT OF RESCISSION.

Witness:                                            Borrower(s):
/s/ Harriet Smith                                   /s/ Wayne Estep                     (Seal)
                                                    Signature of WAYNE MAURICE ESTEP
/s/ Harriet Smith                                   /s/ Lorraine Estep                  (Seal)
                                                    Signature of LORRAINE S ESTEP
                                                                                        (Seal)
                                                                                        (Seal)

ACCOUNT# / NOTE#




1544MD (1402)

permit any person to have access to any place in which I store my checks, I agree that the failure to keep my checks locked and secure shall constitute negligence and the Bank shall not be responsible for any such checks that are subsequently stolen and forged. I agree to place a stop payment on any lost or stolen check if such item has not already been paid. The Bank shall also not be responsible for paying any such item had I reported or stopped payment on it in a timely manner. I agree to keep any account information, security code, password, PIN or personal identification used to access my deposit or credit Account(s) secure and strictly confidential and not to disclose such information to any other person. I must notify the Bank immediately if this information is lost or has become known to, or been used by, an unauthorized person. I acknowledge that the Bank has no method to determine whether a transaction conducted with use of a valid name, account number, and security code or personal identification was proper, and therefore authorize the Bank to complete any transaction involving my Account made with the use of such information. Subject to applicable law, I agree to be responsible for any transaction initiated with the use of a valid name, account number, security code, or personal identification, and agree that the Bank shall have no liability for any loss, claim or damage I sustain as a result of the use of any security code or personal information described above whether such transaction was authorized or not. These rules apply to all checking, savings, or credit accounts in which a check, draft, or other access device may be used to withdraw or transfer funds.

Duty to Review Account Statement. I agree to review my account statement promptly upon receipt of the statement. Because I am in the best position to discover an unauthorized signature or endorsement, a missing endorsement, any alterations or any counterfeit item, I agree to notify the Bank as provided in the Fair Credit Billing Act Disclosure set forth herein of any such occurrence. If I am absent from my account mailing address, I am responsible to make arrangements to have my statements reviewed for errors and timely report them.

Duty of Care. I agree that I will exercise ordinary care in handling my Account. In exercising ordinary care, I shall have the duty to: carefully examine my bank statements and enclosed items for fraudulent or unauthorized transactions and promptly notify the Bank of fraudulent or unauthorized transactions; timely reconcile my bank statement to detect any other account discrepancies including any missing or diverted deposits; conduct background checks on any individual who has authority to prepare my checks or reconcile my bank statements; independently review the work of any person who is responsible for reconciling my bank statement and preparing checks on a monthly basis; and comply with all other duties imposed on me under the Agreement or under applicable law. My failure to exercise ordinary care or comply with its duties hereunder will constitute negligence and will preclude me from asserting against the Bank any unauthorized transaction on my Account. I acknowledge that the Bank processes its checks by automated means and is under no duty to examine each item presented for payment. I acknowledge that the Bank's signature verification procedure applies to all items presented for payment against my Account including checks or other withdrawal orders presented directly over the counter at any branch location. I agree that such automated check payment and notification procedure is commercially reasonable. I and the Bank, pursuant to applicable law, therefore agree that the Bank shall be deemed to have exercised ordinary care if it adheres to a standard of manual or mechanical examination of a random sampling of items being processed for payment. These items may represent a sampling or selection of items drawn on all accounts, or items which meet certain minimum criteria established by the Bank for manual or mechanical inspection (such as large amounts). The Bank shall be deemed to have acted in good faith and in accordance with reasonable commercial standards in paying any items forged or altered so cleverly (as by unauthorized use of a signature stamp, facsimile machine or otherwise) that the unauthorized signature, endorsement or alteration could not be detected by a reasonable person. The Bank's policies and procedures are general internal guidelines that do not establish a higher standard of care for the Bank than is otherwise established by the laws governing my Account. A clerical error or honest mistake will not be considered a failure of the Bank to perform any of its obligations. If the Bank waives any of its rights as to me or my Account on one or more occasions, it shall not be considered a waiver of the Bank's rights on any other occasion.

Limitation to File Claim. To the extent permitted by applicable law, I agree that no legal proceeding or action may be commenced against the Bank to recover any amounts alleged to have been improperly paid out of the account due to any unauthorized signature or endorsement, any alteration or any other fraudulent or unauthorized transaction unless: (i) I have timely provided the written notices as required above and (ii) such proceeding or action shall have been commenced within one year from the date the statement containing the unauthorized transaction was made available to me. As used herein, a proceeding or action is commenced when I file suit in a court of competent jurisdiction, or if the action is subject to arbitration, when I give the Bank written notice of such action. Any proceeding or action not brought within one year from the date of the first statement containing the unauthorized transaction is forever barred.

Duty to Cooperate. If I report any unauthorized transaction on my Account, I agree to cooperate with the Bank in its investigation of the claim. This includes preparing an affidavit or statement containing whatever information the Bank requires concerning the account, the transaction and the circumstances surrounding the loss. I also agree to file a criminal report and testify against any suspected wrongdoer and waive any claims against the Bank if I fail to do so or if I enter into any settlement, compromise or restitution agreement with the wrongdoer without the consent of the Bank. The Bank may reverse any credit or reimbursement should I fail to file the criminal report or refuse to testify against the wrongdoer.

Assignment of Insurance. I agree to pursue all rights under any insurance policy I maintain before making a claim against the Bank in connection with any unauthorized banking transaction. I agree to provide the Bank with all reasonable information about any insurance coverage, including the name of the insurance carrier, the policy number, policy limits and applicable deductibles. The Bank's liability, if any, will be reduced by the amount of any insurance proceeds I am entitled to receive. At the Bank's request, I agree to assign my rights under any insurance policy to the Bank.

Limitation of Liability. I agree that the Bank has a reasonable time to investigate the facts and circumstances surrounding any claimed loss and that the Bank has no obligation to provisionally credit my Account. The Bank's maximum liability is the lesser of actual damages proved or the amount of the unauthorized withdrawals, reduced by an amount which could not have been realized by the use of ordinary care. In no event will the Bank be liable for special or consequential damages, including attorneys' fees incurred by me. The Bank will not be liable for any items that are counterfeit, forged or altered in such a way that same could not be reasonably detected.

8. Security. I grant you a security interest in my property described in the Equity Line of Credit Deed of Trust or a Mortgage of Real Estate. Furthermore, if I have other loans from you or receive other loans in the future, collateral securing those loans may also secure my obligations under this Agreement. I agree and warrant that the dwelling on which I am granting you a security interest in connection with this Account is my dwelling and is not being held or used for purposes of rental. If all or any part of the property securing this Agreement or any interest in it is sold or transferred without your prior written consent, you may, at your option, accelerate the Outstanding Balance and require immediate payment in full of all sums due hereunder and terminate the Agreement. I also understand that if a third party purchases the property securing this Agreement, they may not assume the remainder of my obligation to you under this Agreement. While this Agreement is in effect, your security interest in my property will remain in effect even though I may have no indebtedness outstanding under this Agreement at any particular time. I understand that I could lose my home if I do not meet the obligations in my Agreement with you.

9. Property Insurance. I agree to obtain property insurance on the property securing this Agreement in an amount at least equal to the combined total of the Maximum Credit Limit established for me and the current outstanding balance of any other mortgage on the property securing this Agreement. I may obtain this property insurance through any person or company of my choice which is reasonably acceptable to you. You will be added to the property insurance policy as an additional insured.

10. Flood Insurance. At such time as it is determined that any of the property in which you have taken a security interest is located in a flood hazard area as defined in the Flood Disaster Protection Act of 1973, I agree to obtain and maintain flood insurance on such property at my expense from such time and for as long as this Agreement is in effect. This flood insurance coverage shall be in an amount equal to the lesser of the Maximum Credit Limit of my Account or the maximum limit of coverage made available for the particular type of property under law. I agree that if I fail to procure or maintain flood insurance coverage in the specified amount for the property within reasonable time of receiving notice from you of either this requirement or of the lapse of an existing policy, that you may, but are not obligated to, expend for my Account any sums which may be necessary to purchase the required flood insurance. I authorize you to treat such expenditures as an Advance on my Account and to add all such expenditures to the Outstanding Principal Balance of my Account which shall be fully secured by the Deed of Trust/Mortgage and which shall accrue Finance Charges from the time expended until paid at the rate accruing from time to time on my Account as set forth herein. Any such Advance shall be repaid in accordance with the draw period payment option designated in this Agreement.

11. Credit Investigation. I authorize you at any time to make or have made whatever credit investigation you feel is appropriate in order to evaluate my credit, personal or financial standing, and/or employment, and I authorize you to provide such information as you deem necessary and proper to credit bureaus, creditors, and any others. I also consent to your obtaining a consumer credit report for the purpose of reviewing my Account, increasing the credit line, taking collection action on the Account or for other legitimate purposes associated with the Account. I understand that I may write or call any BB&T branch office with questions or inquiries about my Account and that I should furnish my complete account number when doing so. I understand that if I dispute the accuracy or completeness of any information supplied by BB&T in a consumer report furnished by a consumer reporting agency I may write: BB&T Loan Services, MC: 100-50-02-57, P.O. Box 2306, Wilson, NC 27893.

12. Late Charge. If I don't make at least the minimum monthly payment within 15 days of the payment due date shown on my periodic statement, I agree to pay you a late charge of 5% of the amount of the payment past due.

13. Finance Charge. The Finance Charge on each Advance to my Account begins to accrue on the date of each such Advance. I agree to pay an Initial Finance Charge of up to $7.00 to purchase the initial flood determination and life of loan service. No time period exists within which any credit extended may be repaid without incurring a Finance Charge. With the exception of the Initial Finance Charge noted above, there will be no Finance Charge imposed until an Advance is made on my Account. The Finance Charge is imposed as long as any part of the Outstanding Principal Balance remains unpaid. For each Billing Cycle, you will figure the Finance Charge on my Account by multiplying the Daily Periodic Rate by the "average daily balance" of my Account and then multiplying the product by the number of days in the Billing Cycle. To get the "average daily balance" you will take the beginning balance of my Account each day, add any new Advances, and subtract any payments or credits. This will give you the daily balance. Then, you will add up all the daily balances and divide them by

the number of days in the Billing Cycle. This will give you the "average daily balance". I understand that the Daily Periodic Rate may vary from statement to statement based upon changes in the Annual Percentage Rate. My Annual Percentage Rate is based on the highest ("Prime Rate") as published on the first business day of the month in the Money Rate Table in the Eastern Edition of the Wall Street Journal in which each Billing Cycle begins ("the Index"). To determine my Annual Percentage Rate, you may add a margin to the Index. My Annual Percentage Rate will not be less than ___3.25___ % nor greater than 24%. I understand that the Annual Percentage Rate and the corresponding Daily Periodic Rate applicable to my Account will increase if the Prime Rate increases and will be reduced if the Prime Rate decreases subject to the maximum and minimum rates set out above. An increase in the Prime Rate will increase the amount of Finance Charges imposed on my Account. Therefore, if I elect the Interest-only Monthly Payment option, an increase in the Prime Rate will cause a corresponding increase in my minimum monthly payment. However, if I elect either the 1.50% of the Outstanding Principal Balance or the Fixed Payment Amount monthly minimum payment options, the effect of an increase in the Prime Rate will be to increase the amount of my final payment or to extend the number of payments necessary to pay off my Account in full.

14. Payment Terms and Maturity Date. This Account has an initial draw period of 5 years during which I may obtain Advances of credit under the Plan. During the draw period you have assigned me one of the following three minimum payment options as is indicated in the heading of this Agreement: (a) monthly interest payments: under this option my payments will be due monthly and will equal the finance charges that accrued on the Outstanding Principal Balance during the preceding billing cycle, or $20.00, whichever is greater; or (b) 1.50% of the Outstanding Principal Balance plus any unpaid fees: under this option my payments will be due monthly and will equal 1.50% of the Outstanding Principal Balance plus any unpaid fees or $20.00, whichever is greater, or (c) fixed payment amount: under this option my payments will be due monthly and will equal the fixed payment amount I choose, which amount must equal or exceed 1.50% of the Maximum Credit Limit.

During the draw period, I may pay either the entire Outstanding Balance or less than the Outstanding Balance shown on my periodic statement unless the entire Outstanding Balance has become due. When I do not pay the entire Outstanding Balance as shown on my periodic statement, I must pay at least the minimum monthly payment as calculated in accordance with the draw period payment option designated in this Agreement. At the end of the draw period, I must repay the Outstanding Balance as it exists as of the ending date of the draw period. During the repayment period, my minimum monthly payment will be fixed and equal to 2 1/2% of the Outstanding Balance, or $100, whichever is greater. The length of the repayment period is not fixed but will depend upon the amortization of the Outstanding Balance at the end of the draw period based upon my minimum monthly payments and my finance charges.

During the repayment period, I may pay either the entire Outstanding Balance or less than the Outstanding Balance shown on the periodic statement unless the entire Outstanding Balance has become due. When I do not pay the entire Outstanding Balance as shown on the periodic statement, I must pay at least the minimum monthly payment calculated for the repayment period. During the repayment period, the margin may be increased to 2.50%. To the extent not otherwise prohibited by applicable law, my payments shall be applied first to accrued Finance Charges, then to the Outstanding Principal Balance, then to late charges, if any, and then to any other fees due hereunder.

During the draw and repayment periods, you will bill me on a periodic (monthly) basis on a date you select for all amounts I owe under the plan. When I receive my periodic statement, I agree to examine it and immediately tell you about any charge or item I believe to be in error or subject to dispute. I have 60 days after the billing date on the periodic statement to notify you in writing of any inaccuracies in it. If I fail to do so, the statement will be deemed to be accepted by me and correct.

I understand that under some circumstances my minimum monthly payments may not pay in full the finance charges that accrue on my Account in which event "negative amortization" will occur. "Negative amortization" increases my principal balance and reduces my equity in the property which I have given as security for this Agreement.

I agree that prior to the expiration of the initial five year draw period, you have the right to review my Account and to decide whether the initial draw period will be renewed for an additional five year period. If you should decide to renew the initial draw period for an additional five year period, you shall at the expiration of the second five year draw period have the right to review my Account and to decide whether the second five year draw period will be renewed for a third five year draw period. In no event shall the aggregate draw period exceed a total of fifteen years. During any renewal of the draw period, the terms and conditions of this Agreement will remain the same. The Maximum Credit Limit specified in the heading of this Agreement shall not be increased at the time of any such renewal or at any other time. I will be notified by you if you decide not to renew the draw period.

Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. I agree that tender of my check or other payment instrument so marked will not satisfy or discharge my obligation under this Agreement, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

15. Fixed Option. This Plan feature allows me to request an Advance from my Account at a fixed Annual Percentage Rate for a specified period of time. If I choose this option, the terms of this Agreement are modified as provided below as to each such Advance. This option is available to me throughout my draw period. I may choose to apply an Advance made under this option to same or all of my variable rate Outstanding Balance. The repayment term I select under this option cannot exceed 120 months or the maturity date of my Account. The minimum I can advance under this Fixed Option is $5,000. The maximum advanced under this option cannot cause me to exceed my Maximum Credit Limit. I can have a maximum of three Fixed Options outstanding at one time. My repayment schedule for a Fixed Option is monthly. The Annual Percentage Rate for a Fixed Option Advance is based on the value of an Index. The Index is the highest prime rate as published in the Eastern Edition of the Wall Street Journal on the day my request is fulfilled. To obtain the actual APR, you will add a margin (or spread) between 0% and 5% to the value of the Index. I understand that the minimum APR on a Fixed Option will never exceed 18% or the maximum allowed by law, whichever is less. You may periodically offer a special Fixed Option promotional rate to apply to any Fixed Options that meet the criteria for the promotional offer. Such a promotional rate will be based on the above Index plus or minus a margin (or spread) set by you. I should contact a BB&T branch office for the APR currently in effect for your Fixed Option. Except in IN and MD, you may assess a processing or modification fee of up to $50 for each new Fixed Option that I obtain. I understand that the total payment amount you bill me each month will include the sum of all scheduled payments for Fixed Options and the amount, if any, due and payable on my variable rate Outstanding Balance. To the extent a payment is applied to the Outstanding Principal Balance, that payment reduces the amount of Advances counted against my Maximum Credit Limit. I understand that you may elect to apply payment terms to Fixed Options that are the same as payment terms for other Advances made under the Plan. I will then repay my total Outstanding Balance according to the minimum monthly payment option designated in this Agreement. You may elect, but are not required, to do this if I terminate my Account and require me to pay the entire Outstanding Balance in one payment (accelerate) as provided in this Agreement.

16. Returned Payment Fee. I agree to pay you a bad check fee of $15.00 each time I make a payment with a check that is dishonored on the second presentment.

17. Release Fee. I may be assessed a lien release fee at the time my loan is paid off, which will be based on the amount currently charged by the county or state for releasing your lien.

18. Financial Updates. I agree to provide you with updates of my financial condition as requested by you within 15 days of your request.

19. Termination; Payment in Full. Notwithstanding any other provision of this Agreement, you have the right to terminate my Account and require me to pay you the entire Outstanding Balance in one payment (accelerate) in any of the following circumstances:

(a) If I engage in fraud or material misrepresentation at any time in connection with the Account or with any other account I have with you. I understand that this may consist of a false representation, whether by words or conduct, by false or misleading allegations or statements, or by concealment of a fact which should have been disclosed, and applies to fraud or material misrepresentation in connection with my application or during the draw or repayment periods, or at any other time during my Account relationship with you.

(b) If I do not meet any of the repayment terms of my Agreement with you.

(c) If I act or fail to act in a way which adversely affects your security for this Agreement or any right which you may have in such security. Such action or inaction includes but is not limited to the following: if I sell the property or otherwise transfer title to the property without your prior express written permission; if I do not maintain insurance on the property according to your requirements; if I commit waste or otherwise damage or destroy the property, or any portions of it. In such a way that it adversely affects your security; if I fail to pay taxes on the property; if certain liens or judgments are filed; if the property is condemned by a governmental authority; if a prior lienholder commences foreclosure proceedings; or if I should die.

I have the right at any time to terminate this Agreement as to future Advances by giving you written notice signed by all persons obligated under this Agreement.

I understand and agree that any termination will not relieve me of my obligations under this Agreement existing prior to its termination, and that termination will not relieve me of my obligations under this Agreement to repay all amounts loaned to me as well as any Finance Charge or fees imposed on my Account. I also understand that termination will not affect any security for the Advances made under this Agreement until my obligations to you under this Agreement have been satisfied in full.

20. Repayment of Closing Costs. If the Bank pays any or all of the closing costs to establish my account and I elect to terminate my account within three years of the origination date, I will be asked to repay some or all of the closing costs paid to outside providers on my behalf. These costs may include, but are not limited to, title insurance premiums, attorney, appraisal, flood certification, and recording fees. I understand that in establishing this account you have remitted $ 125.01 to outside providers on my behalf.

21. Subordination. I understand and agree that if I request the Bank to subordinate the lien position of my account to another lienholder, you may charge and collect a fee of $100 to fulfill my request.

22. Freezing or Reducing The Account. Notwithstanding any other provision of this Agreement, you have the right to prohibit additional extensions of credit to me (freeze the Account) or to reduce my Maximum Credit Limit in the following circumstances:

(a) If the value of the property which secures my Agreement with you declines significantly below its appraised value for purposes of the Plan. Your determination of what is a "significant decline" will be made on a case-by-case basis.

(b) If you reasonably believe that I will not be able to fulfill my repayment obligations under the Agreement because of a material change in my financial circumstances. Such a "material change" could include, but is not limited to, my losing my job, my failure to pay other debts, or my filing a petition in bankruptcy or having such a petition filed against me.

(c) If I default on any material obligation of the Agreement. I understand that each and every promise, covenant, warranty or agreement which I have made to you in connection with this Agreement is a material obligation.

(d) If government action results in any of the following: (i) precludes you from imposing the agreed upon Annual Percentage Rate; (ii) adversely affects the priority of your security interest to the extent that the value of the security interest is less than 120% of the credit line; or (iii) other government action is taken which would permit such a freeze or reduction.

(e) If the maximum Annual Percentage Rate permitted by this Agreement or by law is reached.

(f) If you are notified by any of your regulatory agencies that continued advances under the Plan constitute an unsafe and unsound practice.

You will notify me within 3 business days if you freeze my Account or reduce my credit limit. I understand that once my Account has been frozen, I will no longer have advance privileges (even if I have not received your account freeze notification). If you freeze my Account or reduce my credit limit, it is my responsibility to request reinstatement of my credit privileges, to provide you with a reason for the reinstatement request, and to furnish you with any evidence that the condition allowing the freeze or reduction has changed. You will investigate my request for reinstatement and determine whether the condition has ceased to exist.

I also understand that any one person obligated under this Agreement has a right to request that you not make further Advances on my Account, that such a request must be made in writing and that you may honor such a request but are not required to do so. In the event you honor such request and all persons obligated under this Agreement make a written request for reinstatement of draw privileges, draw privileges will be reinstated on the Account unless draw privileges have been otherwise suspended or terminated and I hereby waive notice of such reinstatement of draw privileges.

23. Change of Terms. You have the right to make changes in the terms of this Agreement to the extent that such changes are specifically provided for in this Agreement or permitted by applicable law. The circumstances in which a change in terms may be made include, but are not limited to, the following: (i) if you and I expressly agree in writing to the change of terms; (ii) if you freeze my Account or reduce my credit limit as described in the Freezing or Reducing The Account paragraph; (iii) if the change will unequivocally benefit me for the duration of this Agreement (for example, you renew or extend my Plan); (iv) you change the Index and margin used to calculate the Finance Charge under the Plan if the original Index is no longer available, and the new Index has an historical movement substantially similar to that of the original Index, and the new Index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable; (v) if you make an insignificant change in terms.

24. Waiver. I understand that if you fail to insist upon the strict performance of any provision of this Agreement or fail to enforce or exercise any of your rights under this Agreement, such failure shall not be construed or operated to be, or be, a waiver for the future of any such provision or right. For example, although you may choose not to immediately and permanently terminate my Account and accelerate the balance, you retain the right to do so at a later time if the condition allowing termination and acceleration continues to exist or exists at that time.

25. Costs of Collection. If you have to refer my Account to an attorney for purposes of collection, I agree to pay all of your collection expenses including reasonable attorneys' fees in the amount of 15% of the Outstanding Balance due.

26. Effective Date. This Agreement will become fully effective as of the Date listed on page 1. I agree that consummation of the Agreement will have occurred in the state of Maryland.

27. Expiration Date. Unless renewed or sooner terminated, my right to receive Advances under this Agreement will expire 5 years from the date this Agreement is executed. In the event this Agreement is renewed as provided herein, the period in which I may receive Advances shall not exceed 15 years from the date of this Agreement. However, upon expiration of my right to receive Advances under this Agreement, I shall continue to be bound by this Agreement in that I am required to pay the balance of my Account in accordance with the terms of this Agreement and, until paid, I will be liable for the Finance Charges imposed under this Agreement.

28. Joint and Several Liability. If more than one person signed the Application and/or this Agreement or otherwise is allowed to take part in this Plan, each person is both individually and jointly liable for all payments due under this Agreement and Plan.

29. Tax Deductibility. I understand that I should consult a tax advisor regarding deductibility of interest and charges for the Plan.

30. Governing Law. I agree that this Agreement and my Account shall be governed by the laws of Maryland (and specifically, the Bank elects to have this instrument or agreement governed by Subtitle 9 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, as amended), and of the United States, and I submit to the jurisdiction of any Maryland state court or federal court sitting in the state of Maryland; provided however that, any Mortgage of Real Estate or Deed of Trust covering my property located in another state shall be governed by and construed in accordance with the laws of that state, and I hereby submit to the jurisdiction of such state in connection with any foreclosure or enforcement proceeding undertaken in connection with my property situated there.

31. Partial Invalidity. If any provision of this Agreement is deemed, determined, declared or adjudged to be invalid, the remainder of this Agreement shall not be affected thereby and each remaining provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

32. Entire Agreement. This Agreement sets forth the entire Agreement between the parties. Any prior conversations or writings are merged in this document and extinguished. No later amendment to this Agreement shall be binding unless such amendment is in writing and signed by each and every party to this Agreement, or you make a change as stated in the Change of Terms paragraph.

**FAIR CREDIT BILLING ACT DISCLOSURES**
**YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about my rights and responsibilities under the Fair Credit Billing Act.

I Should Notify You In Case of Errors or Questions About My Statement.
If I think my Statement is wrong, or if I need more information about a transaction on my Statement, I should write you on a separate sheet at the address listed on my Statement. I should write you as soon as possible. You must hear from me no later than 60 days after you sent me the first Statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

* My full name and account number
* The dollar amount of the suspected error
* I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I should describe the item I am not sure about.

My Rights and Your Responsibilities After You Receive My Written Notice.
You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the Statement was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my Statement that are not in question.

If you find that you made a mistake on my Statement, I won't have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I will have to pay finance charges and I will have to make up any missed payments on the questioned amount. In either case, you will send me a Statement of the amount I owe and the date that it is due.

If I fail to pay the amount you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my Statement. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my Statement was correct.

BK4353PG0273

```
LR IMPROVE SU      40.00
RECORDING FEE      20.00
RECORDATION T     300.00
TOTAL             360.00
Rec# CV01   Rcpt # 3222
KPS   HVD   Blk # 72
Mar 06, 2014      12:24 PM
```

Mail after recording to:

RETURN TO:
RAE BODONYI/AEG
33700 LEAR INDUSTRIAL PKWY
AVON, OHIO 44011

Recording: Time, Book and Page

# DEED OF TRUST

THIS DEED OF TRUST ("Deed of Trust") is made as of this ___25th___ day of __February, 2014__ by and between:

__WAYNE MAURICE ESTEP and LORRAINE S ESTEP__
GRANTOR

ADDRESS:

__6421 Bayside Rd__

__Chesapeake Beach, MD 20732-0000__

TRUSTEES
Herbert M. Wayne
William J. Ziegler

BENEFICIARY
Branch Banking and Trust
Company, a
North Carolina banking
corporation
P.O. Box 1290, Whiteville,
NC 28472

THE FOLLOWING INFORMATION APPLIES TO THIS DEED OF TRUST:

1. This Deed of Trust secures the Debt (as defined below). This Deed of Trust may secure not only existing Debt, but also future advances, whether advances are obligatory or are to be made at the option of the Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust and also to secure all other sums or amounts that may be added to the obligations secured hereby pursuant to the terms of this Deed of Trust. Until this Deed of Trust is released of record, the Beneficiary may make additional loans, advances, readvances, future advances, and other financial accommodations pursuant to the terms of the Note or other Documents from time to time, but the maximum unpaid balance outstanding at any one time shall not exceed the amount set forth in paragraph numbered 2, below (the "Principal Sum"), plus interest thereon, and plus any advances made for taxes, liens, assessments, insurance premiums, costs, and other obligations, including interest thereon, undertaken by the Beneficiary hereunder or in the Note or other Documents, and all such advances, readvances and future advances shall become part of the indebtedness secured by this Deed of Trust with the same priority from the date of recordation of this Deed of Trust and shall be deemed evidenced by the Note and other Documents, and this Deed of Trust. This Deed of Trust may secure the repayment, inter alia, of a revolving credit facility in the initial principal amount of the Principal Sum and there may be repayment and future advances and readvances of principal from time to time under such facility so that the total aggregate principal amount over the term of the Note and other Documents may exceed the Principal Sum; provided, however, that the aggregate outstanding principal balance of said revolving credit facility shall not exceed the Principal Sum at any one time (plus interest thereon and any advances made for taxes, liens, assessments, insurance premiums, costs and other obligations). It is expressly agreed that the outstanding principal balance of the indebtedness secured hereby may, from time to time, be reduced to a zero balance without such repayment operating to extinguish and release the lien and security interests created by this Deed of Trust. This Deed of Trust shall remain in full force and effect as to any subsequent future advances and readvances made after the zero balance without loss of priority until the indebtedness secured hereby is paid in full and satisfied, the Note and other Documents have been cancelled and this Deed of Trust released of record; and Grantor waives the operation of any applicable statute, law or regulation having a contrary effect.

2. The maximum principal amount of the Debt (defined below) which may be secured by this Deed of Trust at any one time is:
__THIRTY THOUSAND DOLLARS & 00/100__

$(__30,000.00__) Dollars. The principal amount of the Debt on the date hereof is
$ __None__

3. The "Debt", on the date hereof, is evidenced by a [X] BB&T Home Equity Line Agreement [ ] Retail Note & Security Agreement of even date herewith from Grantor and may be evidenced by and shall be at all times deemed to include, any and all other notes or other Documents now or hereafter evidencing any debt whatsoever incurred by Grantor or Borrower and payable to Beneficiary, the terms of which are incorporated herein by reference.

4. No execution of a written instrument or notation shall be necessary to evidence or secure any advances made hereunder. The period within which advances are to be made shall be the fifteen year period beginning on the date of this Deed of Trust.

1432MD (1402)           Page 1 of 6

BBT Confidential

BK4353PG0274

5. The real property which is the subject of this Deed of Trust is located in the City of CHESAPEAKE BEACH in the County of CALVERT in the State of Maryland, and the legal description of the real property is set forth as follows:

SEE EXHIBIT A

STATEMENT OF PURPOSE: In this Deed of Trust reference shall be made simply to the "Note or other Document", and such a reference is deemed to apply to all of the instruments which evidence or describe the Debt, or which secure its payment, and to all renewals, extensions and modifications thereof, whether heretofore or hereafter executed, and includes without limitation all writings described generally and specifically on the first page of this Deed of Trust in numbered paragraph 2. This Deed of Trust shall secure the performance of all obligations of Grantor and of Borrower to Beneficiary which are described in this Deed of Trust, in the Note or other Document; and such performance includes the payment of the Debt. In this Deed of Trust the definition of "Debt" includes: (i) the principal; (ii) all accrued interest including possible fluctuations of the interest rate if so provided in the Note or other Document; (iii) all renewals or extensions of any obligation under the Note or other Document (even if such renewals or extensions are evidenced by new notes or other documents); and (iv) all other obligations of Grantor or Borrower to Beneficiary which are described in this Deed of Trust, or in the Note or other Document, (for example, payment of the reasonable attorneys fees of the Beneficiary, insurance premiums and ad valorem taxes).

NOW, THEREFORE, for the purposes and under the conditions described in this Deed of Trust and in consideration of the Debt and the mutual promises of Grantor and Beneficiary, Grantor hereby conveys to Trustees,with general warranty of title, in trust, with power of sale, the real property described in this Deed of Trust, together with any improvements, equipment and fixtures existing or hereafter placed on or attached to this real property, all proceeds thereof and all other appurtenant rights and privileges. The term "the Property" shall include this real property, any such improvements, fixtures, and also all appurtenant rights and privileges.

TO HAVE AND TO HOLD the Property, to Trustees, their successors and assigns,in fee simple forever but upon the trust, and under the terms and conditions of this Deed of Trust, to which Grantor, Trustees and Beneficiary hereby agree:

1. PERFORMANCE BY GRANTOR. Grantor shall fulfill all of Grantor's obligations as specified in this Deed of Trust, the Note or other Document.

2. TAXES, DEEDS OF TRUST, OTHER ENCUMBRANCES. Grantor shall make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the Property. Grantor shall timely pay and perform any obligation, covenant or warranty contained in any other deed of trust or writing (herein Other Deed of Trust) which gives rise to any or which may constitute a lien upon any of the Property. Grantor shall upon request of Beneficiary promptly furnish satisfactory evidence of such payment or performance. Grantor shall not enter into, terminate, cancel or amend any lease affecting the Property or any part thereof without the prior written consent of Beneficiary. Grantor shall timely pay and perform all terms of any lease or sublease of the Property or any part thereof.

3. INSURANCE. Grantor shall continuously maintain insurance on all improvements which are now existing and which might hereafter become part of the Property against loss by fire, flood and other hazards, casualties and contingencies in such amounts and for such periods as may be required from time to time by Beneficiary, and shall pay promptly, when due, any premiums on the Insurance. If it is determined at any time that any of the Property is located in a flood hazard area as defined in the Flood Disaster Protection Act 1973, Grantor shall obtain and maintain flood insurance on Property at Grantor's expense for as long as this Deed of Trust is in effect. Flood insurance coverage shall be in an amount equal to the lesser of (i) the maximum amount secured as set forth herein or (ii) the maximum limit of coverage made available for the particular type of property under the law. If Grantor shall fail to procure or maintain hazard or flood insurance coverage in the specified amount for the Property within a reasonable time of receiving notice from Beneficiary of either the requirement or of the lapse of an existing policy, Beneficiary may, but is not obligated to, expend for the account of Grantor any sums which may be necessary to purchase the required hazard or flood insurance, which shall be fully secured by this Deed of Trust and which shall accrue interest from the time expended until paid at the rate set forth in the Note or other Document. All insurance shall be carried with companies approved by Beneficiary and shall contain a loss payable clause (New York long form) in favor of and in a form acceptable to Beneficiary. Grantor shall cause all policies and renewals thereof to be delivered to Beneficiary. In the event of loss, Grantor shall give immediate written notice to Beneficiary, and Beneficiary may make proof of loss if such is not made promptly by Grantor. Each insurer is hereby expressly authorized and directed by Grantor to make payment for the loss directly and solely to Beneficiary. Beneficiary may apply the insurance proceeds, or any part thereof, in its sole discretion and at its option, either to the reduction of Debt or to the restoration or repair of any portion of the Property damaged, but Beneficiary shall not be obligated to see to the proper application of any amount paid over to Grantor.

1432MD (1-02)    Page 2 of 6

BBT Confidential

BK4353PG0274

5. The real property which is the subject of this Deed of Trust is located in the City of CHESAPEAKE BEACH in the County of CALVERT in the State of Maryland, and the legal description of the real property is set forth as follows:

SEE EXHIBIT A

STATEMENT OF PURPOSE: In this Deed of Trust reference shall be made simply to the "Note or other Document", and such a reference is deemed to apply to all of the instruments which evidence or describe the Debt, or which secure its payment, and to all renewals, extensions and modifications thereof, whether heretofore or hereafter executed, and includes without limitation all writings described generally and specifically on the first page of this Deed of Trust in numbered paragraph 2. This Deed of Trust shall secure the performance of all obligations of Grantor and of Borrower to Beneficiary which are described in this Deed of Trust, in the Note or other Document, and such performance includes the payment of the Debt. In this Deed of Trust the definition of "Debt" includes: (i) the principal; (ii) all accrued interest including possible fluctuations of the interest rate if so provided in the Note or other Document; (iii) all renewals or extensions of any obligation under the Note or other Document (even if such renewals or extensions are evidenced by new notes or other documents); and (iv) all other obligations of Grantor or Borrower to Beneficiary which are described in this Deed of Trust, or in the Note or other Document, (for example, payment of the reasonable attorneys fees of the Beneficiary, insurance premiums and ad valorem taxes).

NOW, THEREFORE, for the purposes and under the conditions described in this Deed of Trust and in consideration of the Debt and the mutual promises of Grantor and Beneficiary, Grantor hereby conveys to Trustees, with general warranty of title, in trust, with power of sale, the real property described in this Deed of Trust, together with any improvements, equipment and fixtures existing or hereafter placed on or attached to this real property, all proceeds thereof and all other appurtenant rights and privileges. The term "the Property" shall include this real property, any such improvements, fixtures, and also all appurtenant rights and privileges.

TO HAVE AND TO HOLD the Property, to Trustees, their successors and assigns, in fee simple forever but upon the trust, and under the terms and conditions of this Deed of Trust, to which Grantor, Trustees and Beneficiary hereby agree:

1. PERFORMANCE BY GRANTOR. Grantor shall fulfill all of Grantor's obligations as specified in this Deed of Trust, the Note or other Document.

2. TAXES, DEEDS OF TRUST, OTHER ENCUMBRANCES. Grantor shall make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the Property. Grantor shall timely pay and perform any obligation, covenant or warranty contained in any other deed of trust or writing (herein Other Deed of Trust) which gives rise to any or which may constitute a lien upon any of the Property. Grantor shall upon request of Beneficiary promptly furnish satisfactory evidence of such payment or performance. Grantor shall not enter into, terminate, cancel or amend any lease affecting the Property or any part thereof without the prior written consent of Beneficiary. Grantor shall timely pay and perform all terms of any lease or sublease of the Property or any part thereof.

3. INSURANCE. Grantor shall continuously maintain insurance on all improvements which are now existing and which might hereafter become part of the Property against loss by fire, flood and other hazards, casualties and contingencies in such amounts and for such periods as may be required from time to time by Beneficiary, and shall pay promptly, when due, any premiums on the insurance. If it is determined at any time that any of the Property is located in a flood hazard area as defined in the Flood Disaster Protection Act 1973, Grantor shall obtain and maintain flood insurance on Property at Grantor's expense for as long as this Deed of Trust is in effect. Flood insurance coverage shall be in an amount equal to the lesser of (i) the maximum amount secured as set forth herein or (ii) the maximum limit of coverage made available for the particular type of property under the law. If Grantor shall fail to procure or maintain hazard or flood insurance coverage in the specified amount for the Property within a reasonable time of receiving notice from Beneficiary of either the requirement or of the lapse of an existing policy, Beneficiary may, but is not obligated to, expend for the account of Grantor any sums which may be necessary to purchase the required hazard or flood insurance, which shall be fully secured by this Deed of Trust and which shall accrue interest from the time expended until paid at the rate set forth in the Note or other Document. All insurance shall be carried with companies approved by Beneficiary and shall contain a loss payable clause (New York long form) in favor of and in a form acceptable to Beneficiary. Grantor shall cause all policies and renewals thereof to be delivered to Beneficiary. In the event of loss, Grantor shall give immediate written notice to Beneficiary, and Beneficiary may make proof of loss if such is not made promptly by Grantor. Each insurer is hereby expressly authorized and directed by Grantor to make payment for the loss directly and solely to Beneficiary. Beneficiary may apply the insurance proceeds, or any part thereof, in its sole discretion and at its option, either to the reduction of Debt or to the restoration or repair of any portion of the Property damaged, but Beneficiary shall not be obligated to see to the proper application of any amount paid over to Grantor.

1432MD (1402)  Page 2 of 6

BBT Confidential

BK4353PG0275

4. ESCROW DEPOSITS. Upon demand of Beneficiary, Grantor shall add to each payment required under the Note or other Document the amount estimated by Beneficiary to be sufficient to enable Beneficiary to pay as they become due all taxes, charges, assessments, and insurance premiums which Grantor is required to pay. Further, any deficiency occasioned by an insufficiency of such additional payments shall be deposited by Grantor with Beneficiary upon demand.

5. PRESERVATION AND MAINTENANCE OF THE PROPERTY. Grantor shall keep the Property in good order and repair as it now is (reasonable wear and tear excepted) and shall neither commit nor permit any waste or any other occurrence or use which might impair the value of the Property. Grantor shall not initiate or acquiesce in a change in the zoning classification of the Property or make or permit any structural alteration thereof without Beneficiary's prior written consent.

6. COMPLIANCE WITH LAWS. Grantor shall regularly and promptly comply with any applicable legal requirements of the United States, the State of Maryland or other governmental entity, agency or instrumentality relating to the use or condition of the Property.

7. CONDEMNATION AWARD. Any award for the taking of, or damages to, all or any part of the Property or any interest therein upon the lawful exercise of the power of eminent domain shall be payable solely to Beneficiary, which may apply the sums so received to payment of the Debt.

8. PAYMENTS BY BENEFICIARY. If Grantor or Borrower shall be in default in the timely payment or performance of any of Grantor's or Borrower's obligations, the Note or other document, under this Deed of Trust or Other Deed of Trust, Beneficiary may, but it is not obligated to, expend for the account of Grantor any sums, expenses and fees which Beneficiary believes appropriate for the protection of the Property and the maintenance and execution of this trust. Any amounts so expended shall be deemed principal advances fully secured by this Deed of Trust, shall bear interest from the time expended until paid at the rate of interest accruing on the Note or other Document, and shall be due and payable on demand.

9. RENTS and PROFITS. Grantor hereby assigns to Beneficiary all future rents and profits from the Property as additional security for the payment of the Debt and for the performance of all obligations secured by this Deed of Trust. Grantor hereby appoints Beneficiary as Grantor's attorney-in-fact to collect any rents and profits, with or without suit, and to apply the same, less expenses of collection, to the Debt or to any obligations secured by this Deed of Trust in any manner as Beneficiary may desire. However, until default under the Note or other Document or under this Deed of Trust, Grantor may continue to collect and retain the rents and profits without any accountability to Beneficiary. Beneficiary's election to pursue the collection of the rents or profits shall be in addition to all other remedies which Beneficiary might have and may be put into effect independently of or concurrently with any other remedy.

10. GRANTOR'S CONTINUING OBLIGATION. This Deed of Trust shall remain as security for full payment of the Debt and for performance of any obligation evidenced by the Note or other Document, notwithstanding any of the following: (a) the sale or release of all or any part of the Property; (b) the assumption by another party of Grantor's obligations under this Deed of Trust, the Note or other Document; (c) the forbearance or extension of time for payment of the Debt or for performance of any obligations under this Deed of Trust, the Note or other Document, whether granted to Grantor or to a subsequent owner of the Property; or (d) the release of any party who has assumed payment of the Debt or who assumed any other obligations under this Deed of Trust, the Note or other Document. None of the foregoing shall, in any way, affect the full force and effect of the lien of this Deed of Trust or impair Beneficiary's right to a deficiency judgment in the event of foreclosure against Grantor or any party who had assumed payment of the Debt or who assumed any other obligations the performance of which is secured by this Deed of Trust. Beneficiary may, in its sole discretion, from time to time waive or forbear from enforcing any provision of this Deed of Trust, and no such waiver or forbearance shall be deemed a waiver by Beneficiary of any right or remedy provided herein or by law or be deemed a waiver of the right at any later time to enforce strictly all provisions of this Deed of Trust and to execute any and all remedies provided herein and by law.

11. TRUSTEES. Beneficiary shall have the unqualified right to remove any individual designated as a Trustee on the first page of this Deed of Trust, and to appoint one or more substitute or successor Trustees by instruments filed for registration in the Land Records Office where this Deed of Trust is recorded. Any such removal or appointment may be made at any time and from time to time without notice, without specifying any reason therefor and without any court approval. Any such appointee shall become fully vested with title to the Property and with all rights, powers and duties conferred upon the individuals originally designated as Trustees, in the same manner and to the same effect as though that party were named herein as an original Trustee. The Trustees may act hereunder jointly, or any Trustee may act separately, and such Trustee shall have full power to exercise all powers and discretions herein granted to the Trustees without the joinder of the other Trustees; and the Trustees or Trustee may sell and convey the Property as herein provided, although the Trustees, or either of them, have been, may now be or may hereafter be attorneys or agents of any holder of the Note, in respect of any manner or business whatsoever.

12. INDEMNIFICATION IN EVENT OF ADVERSE CLAIMS. In the event that Beneficiary or Trustees voluntarily or otherwise shall become parties to any suit or legal proceeding involving the Property, they shall be saved harmless and shall be reimbursed by Grantor for any amounts paid, including all costs, charges and attorney's fees incurred in any such suit or proceeding, and the same shall be secured by this Deed of Trust and payable upon demand.

13. INSPECTION. Beneficiary may at any reasonable time and from time to time make or cause to be made reasonable entries upon and inspections of the Property.

14. WARRANTIES. Grantor covenants with Trustees and Beneficiary that Grantor is seized for the Property in fee simple, has the right to convey the same in fee simple, that title to the Property is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever, subject only to any declarations, easements, restrictions or encumbrances listed in the title opinion or title insurance policy which Beneficiary obtained in the transaction in which Beneficiary obtained this Deed of Trust.

BBT Confidential

BK4353PG0276

15. ATTORNEYS' FEES. In the event that Grantor or Borrower shall default in its obligations under this Deed of Trust, the Note or other Document, and Beneficiary employs an attorney to assist in the collection of the Debt or to enforce compliance of Grantor with any of the provisions of this Deed of Trust, the Note or other Documents or in the event Beneficiary or Trustees shall become parties to any suit or legal proceeding (including any proceeding conducted before any United State Bankruptcy Court) concerning the Property, concerning the lien of this Deed of Trust, concerning collection of the Debt or concerning compliance by Grantor with any of the provisions of this Deed of Trust, the Note or other Document, Grantor or Borrower shall pay Beneficiary's reasonable attorneys' fees and all of the costs that may be incurred, and such fees and costs shall be secured by this Deed of Trust and its payment enforced as if it were a part of the Debt. Grantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is commenced.

16. ANTI-MARSHALLING PROVISIONS. Trustees and Beneficiary may grant releases at any time and from time to time of all or any portion of the Property (whether or not such releases are required by agreement among the parties) agreeable to Trustees and Beneficiary without notice to or the consent, approval or agreement of other Parties and interests, including junior lienors and Purchasers subject to the lien of this Deed of Trust and such releases shall not impair in any manner the validity of or priority of this Deed of Trust on that portion of the Property remaining subject to this Deed of Trust, nor release Grantor from personal liability for the Debt. Notwithstanding the existence of any other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies available to Beneficiary, and Beneficiary shall further have the right to determine the order in which any or all portions of the Debt are satisfied from the proceeds realized upon the exercise of any remedy it has. Grantor, or any party who consents to this, or any party who has actual or constructive notice hereof, hereby waives any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

17. EVENTS OF DEFAULT. Beneficiary has the right to terminate the future advance provisions of this Deed of Trust and declare the Debt immediately due and payable in any of the following circumstances:

(a) If the Grantor or Borrower fails or neglects to meet the repayment terms of the Debt, or fails or neglects to pay when due any and all other sums which are or may become secured by this Deed of Trust;

(b) If the Grantor acts or fails to act in a way which adversely affects the Property pledged under this Deed of Trust or any right which the Beneficiary may have in such Property. Such action or inaction includes but is not limited to the following: if the Grantor sells the Property or otherwise transfers title to the Property without the prior written permission of the Beneficiary; if the Grantor fails to maintain insurance on the Property according to the Beneficiary's requirements; if the Grantor commits waste or otherwise damages or destroys the Property, or any portions of it, in such a way that is adversely affects the Property; if the Grantor fails to pay taxes on the Property; if certain liens or judgments are filed; if the Property is condemned by a governmental authority; if a prior lienholder commences foreclosure proceedings; if any Grantor should die;

(c) If any warranty, representation or statement made or furnished to Beneficiary by or on behalf of Grantor or Borrower in connection with this transaction proves to have been false in any material respect when made or furnished;

(d) Any event which would permit termination under the terms of the Note or other Document.

18. REMEDIES OF BENEFICIARY UPON DEFAULT. Upon the occurrence of any event of default, Beneficiary may, at its option, without prior notice to Grantor, declare the debt to be immediately due and payable in full. Upon the occurrence of an event of default, the Trustees or the Beneficiary may institute foreclosure proceedings, and the Grantor assents to the passage of a decree for the sale of the Property and further authorizes the Trustees to sell the Property. Any sale of the Property, or a portion thereof, whether by way of the assent to decree or power of sale, shall be made in accordance with the provisions of Section 7-105, Real Property Article, *Annotated Code of Maryland*, as amended, and Rules 14-201 through 14-210 of the *Maryland Rules*, as amended, or other applicable general or local laws of the State of Maryland or judicial rules of procedure relating to the foreclosure of deeds of trust. The terms of the sale may be cash upon settlement of the sale or upon such other and additional terms as the Trustees deem necessary, proper or convenient, except as specifically limited by applicable law or court rule. Such sale may be of the entire Property as a unit or of such parts or parcels of the entire Property as the Trustees, in their sole and absolute discretion, deem necessary, proper, or convenient. If Trustees deem it best for any reason to postpone or continue the sale at any time or from time to time, they may do so, in which event Trustees shall conduct the postponed sale in the same manner as the original sale provided for in this Deed of Trust. In the event of a sale of the Property under either the power of sale or assent to decree, such sale may be made, at the option of the Beneficiary, subject to one or more of the tenancies entered into subsequent to the recording of this Deed of Trust, in accordance with the provisions of Section 7-105(f)(2),Real Property Article, *Annotated Code of Maryland*, as amended. If the Property shall be advertised for sale as herein provided, and not sold, the Trustees shall be entitled to a commission on the total amount of the indebtedness, principal and interest, remaining unpaid, equal to one-half of the percentage allowed as commission to trustees making a sale under a decree of a Maryland court exercising its equity jurisdiction or as otherwise allowed by applicable law, plus attorneys' fees incurred by the Trustees. In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, unless applicable statutes shall specify otherwise, first, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' and trustee's fees equal to the commission allowed the Trustees for making sales of property by virtue of a decree of a Maryland court exercising equity jurisdiction or as otherwise allowed by applicable law, then to insurance premiums, liens, assessments, taxes and utility charges including such charges advanced by the Beneficiary, then to interest at the default interest rate provided in the Note and other Documents until final ratification of the final auditor's account in the foreclosure proceeding, then to payment of any other sums required to be paid pursuant to any provisions of the Note or other Documents, or this Deed of Trust, whether the same shall have matured or not, and finally the remainder, if any, shall be paid to the Grantor or as otherwise may be judicially determined or required by the provisions of applicable law.

19. RELEASE AND CANCELLATION. Upon a fulfillment of all obligations, the performance of which is secured by this Deed of Trust, and upon payment of the Debt, this Deed of Trust and the Note or other Document shall be marked "Satisfied" and returned to Grantor, and this conveyance shall be null and void and may be cancelled of record at the request and cost of Grantor, and title to the Property shall revest as provided by law.

1432MD (1402)          Page 4 of 6

BBT Confidential

BK4353PG0276

15. ATTORNEYS' FEES. In the event that Grantor or Borrower shall default in its obligations under this Deed of Trust, the Note or other Document, and Beneficiary employs an attorney to assist in the collection of the Debt or to enforce compliance of Grantor with any of the provisions of this Deed of Trust, the Note or other Documents or in the event Beneficiary or Trustees shall become parties to any suit or legal proceeding (including any proceeding conducted before any United State Bankruptcy Court) concerning the Property, concerning the lien of this Deed of Trust, concerning collection of the Debt or concerning compliance by Grantor with any of the provisions of this Deed of Trust, the Note or other Document, Grantor or Borrower shall pay Beneficiary's reasonable attorneys' fees and all of the costs that may be incurred, and such fees and costs shall be secured by this Deed of Trust and its payment enforced as if it were a part of the Debt. Grantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is commenced.

16. ANTI-MARSHALLING PROVISIONS. Trustees and Beneficiary may grant releases at any time and from time to time of all or any portion of the Property (whether or not such releases are required by agreement among the parties) agreeable to Trustees and Beneficiary without notice to or the consent, approval or agreement of other Parties and Interests, including junior lienors and Purchasers subject to the lien of this Deed of Trust and such releases shall not impair in any manner the validity of or priority of this Deed of Trust on that portion of the Property remaining subject to this Deed of Trust, nor release Grantor from personal liability for the Debt. Notwithstanding the existence of any other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies available to Beneficiary, and Beneficiary shall further have the right to determine the order in which any or all portions of the Debt are satisfied from the proceeds realized upon the exercise of any remedy it has. Grantor, or any party who consents to this, or any party who has actual or constructive notice hereof, hereby waives any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

17. EVENTS OF DEFAULT. Beneficiary has the right to terminate the future advance provisions of this Deed of Trust and declare the Debt immediately due and payable in any of the following circumstances:

(a) If the Grantor or Borrower fails or neglects to meet the repayment terms of the Debt, or fails or neglects to pay when due any and all other sums which are or may become secured by this Deed of Trust;

(b) If the Grantor acts or fails to act in a way which adversely affects the Property pledged under this Deed of Trust or any right which the Beneficiary may have in such Property. Such action or inaction includes but is not limited to the following: if the Grantor sells the Property or otherwise transfers title to the Property without the prior written permission of the Beneficiary; if the Grantor fails to maintain insurance on the Property according to the Beneficiary's requirements; if the Grantor commits waste or otherwise damages or destroys the Property, or any portions of it, in such a way that is adversely affects the Property; if the Grantor fails to pay taxes on the Property; if certain liens or judgments are filed; if the Property is condemned by a governmental authority; if a prior lienholder commences foreclosure proceedings; if any Grantor should die;

(c) If any warranty, representation or statement made or furnished to Beneficiary by or on behalf of Grantor or Borrower in connection with this transaction proves to have been false in any material respect when made or furnished;

(d) Any event which would permit termination under the terms of the Note or other Document.

18. REMEDIES OF BENEFICIARY UPON DEFAULT. Upon the occurrence of any event of default, Beneficiary may, at its option, without prior notice to Grantor, declare the debt to be immediately due and payable in full. Upon the occurrence of an event of default, the Trustees or the Beneficiary may institute foreclosure proceedings, and the Grantor assents to the passage of a decree for the sale of the Property and further authorizes the Trustees to sell the Property. Any sale of the Property, or a portion thereof, whether by way of the assent to decree or power of sale, shall be made in accordance with the provisions of Section 7-105, Real Property Article, Annotated Code of Maryland, as amended, and Rules 14-201 through 14-210 of the Maryland Rules, as amended, or other applicable general or local laws of the State of Maryland or judicial rules of procedure relating to the foreclosure of deeds of trust. The terms of the sale may be cash upon settlement of the sale or upon such other and additional terms as the Trustees deem necessary, proper or convenient, except as specifically limited by applicable law or court rule. Such sale may be of the entire Property as a unit or of such parts or parcels of the entire Property as the Trustees, in their sole and absolute discretion, deem necessary, proper, or convenient. If Trustees deem it best for any reason to postpone or continue the sale at any time or from time to time, they may do so, in which event Trustees shall conduct the postponed sale in the same manner as the original sale provided for in this Deed of Trust. In the event of a sale of the Property under either the power of sale or assent to decree, such sale may be made, at the option of the Ben eficiary, subject to one or more of the tenancies entered into subsequent to the recording of this Deed of Trust, in accordance with the provisions of Section 7-105(f)(2),Real Property Article, Annotated Code of Maryland, as amended. If the Property shall be advertised for sale as herein provided, and not sold, the Trustees shall be entitled to a commission on the total amount of the indebtedness, principal and interest, remaining unpaid, equal to one-half of the percentage allowed as commission to trustees making a sale under a decree of a Maryland court exercising its equity jurisdiction or as otherwise allowed by applicable law, plus attorneys' fees incurred by the Trustees. In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, unless applicable statutes shall specify otherwise, first, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' and trustee's fees equal to the commission allowed the Trustees for making sales of property by virtue of a decree of a Maryland court exercising equity jurisdiction or as otherwise allowed by applicable law, then to insurance premiums, liens, assessments, taxes and utility charges including such charges advanced by the Beneficiary, then to interest at the default interest rate provided in the Note and other Documents until final ratification of the final auditor's account in the foreclosure proceeding, then to payment of any other sums required to be paid pursuant to any provisions of the Note or other Documents, or this Deed of Trust, whether the same shall have matured or not, and finally the remainder, if any, shall be paid to the Grantor or as otherwise may be judicially determined or required by the provisions of applicable law.

19. RELEASE AND CANCELLATION. Upon fulfillment of all obligations, the performance of which is secured by this Deed of Trust, and upon payment of the Debt, this Deed of Trust and the Note or other Document shall be marked "Satisfied" and returned to Grantor, and this conveyance shall be null and void and may be cancelled of record at the request and cost of Grantor, and title to the Property shall revest as provided by law.

1432MD (1402)        Page 4 of 6

BBT Confidential

BK4353PG0277

20. MISCELLANEOUS. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and shall not be used to interpret or define any provisions. All remedies provided herein are distinct and cumulative to any other right or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively. All covenants contained herein shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors or assigns. Whenever used the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders. This Deed of Trust shall be governed by and construed under Maryland law. Any forbearance by Beneficiary in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Beneficiary shall not be a waiver of Beneficiary's right to accelerate the maturity of the Debt. Time is of the essence in the payment or performance of any of the obligations, or of any covenant or warranty contained in this Deed of Trust or in the Note, or other Document.

IN TESTIMONY WHEREOF, each individual Grantor has hereunto set his hand and adopted as his seal the word "SEAL" appearing beside or near his signature, this sealed instrument being executed and delivered on the date first above written.

Grantor: _Wayne Maurice Estep_ (SEAL)
          WAYNE MAURICE ESTEP

Grantor: _Lorrain S. Estep_ (SEAL)
          LORRAINE S ESTEP

Grantor: _____ (SEAL)

Grantor: _____ (SEAL)

STATE OF MARYLAND )
OF Calvert ) TO WIT:

I HEREBY CERTIFY, that on this __25__ day of __February__, __2014__, before me, the subscriber, a Notary Public of the State of Maryland, personally appeared __Wayne M + Lorraine Estep__, known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within Deed of Trust as the Grantor(s), and acknowledged the same for the purposes therein contained and in my presence signed and sealed the same.

At the same time also appeared __Victoria Harnell Smith__ __Vice President, BB+T__ and made oath that (s)he is agent of the Beneficiary in the within Deed of Trust and is duly authorized to make this affidavit, and that the consideration therein set forth is true and bona fide as therein set forth, and that the actual sum of money advanced at the closing transaction by the Beneficiary was paid over and disbursed by the Beneficiary either to Grantor(s) (or one of them) or to the person responsible for disbursement of the funds in the closing transaction or their respective agent at a time no later than the delivery by the Grantor(s) of this Deed of Trust.

As Witness, my hand and Notarial Seal.

_Casey Brown_
Notary Public

My Commission Expires: _July 26, 2017_

CASEY BROWN
Notary Public-Maryland
Calvert County
My Commission Expires
July 26, 2017

1432MD (1402)          Page 5 of 6

BBT Confidential

BK4353PG0278

## Acknowledgments

(Acknowledgment form for an Individual:)

STATE OF _____ )
CITY/COUNTY OF _____ ) to-wit:

I HEREBY CERTIFY this on this _____ day of _____, _____, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared _____
_____ who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

Given under my hand and official seal this _____ day of _____,
_____.

_____
Notary Public

My Commission expires: _____

The undersigned hereby certifies that the above instrument has been prepared by an attorney admitted to practice before the Court of Appeals of Maryland or under such attorney's supervision or by one of the parties named in the above instrument.

Name: _Victoria Harrell-Smith_
Victoria Harrell-Smith
Vice President
Branch Banking & Trust

Doc Prep.
BB&T
PO BOX 1290
WHITEVILLE, NC 28472

1432MD (1402)    Page 6 of 6

BK4353PG0278

### Acknowledgments

[Acknowledgment form for an Individual:]

STATE OF _____ }
CITY/COUNTY OF _____ ) to-wit:

  I HEREBY CERTIFY this on this _____ day of _____, _____, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared _____ who is _____ personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

  Given under my hand and official seal this _____ day of _____, _____.

_____
Notary Public

My Commission expires: _____

The undersigned hereby certifies that the above instrument has been prepared by ~~an attorney admitted to practice before the Court of Appeals of Maryland or under such attorney's supervision~~ or by one of the parties named in the above instrument.

Name: _*Victoria Harrell-Smith*_
    **Victoria Harrell-Smith**
    **Vice President**
    **Branch Banking & Trust**

*Doc Prep.*

**BB&T**
**PO BOX 1290**
**WHITEVILLE, NC 29472**

1432MD (1402)   Page 6 of 6

BBT Confidential

BK4353PG0279

## EXHIBIT A

The following described land and premises, situated in the State of Maryland, Calvert County, and known and distinguished as:

Lots numbered 93, 94, 95, in Block numbered 26, of the Subdivision known as Randle Cliffs Beach, formerly known as Summer City, as per plat thereof recorded among the Land Records of Calvert County, Maryland in Liber G.W.D. No. 9, folio 149, and Lot numbered 98, Block numbered 26, of the Subdivision known as Randle Cliffs Beach, formerly known as Summer City, as per plat thereof recorded among the aforesaid Land Records in Liber A.A.H. No. 9, folio 279.

And Lots numbered 96 and 97, in Block numbered 26, of the Subdivision known as Randle Cliffs Beach and formerly known as Summer city as per plat thereof recorded among the Land Records aforesaid in Liber G.W.D. No. 9, folio 149.

This being the same property conveyed to WAYNE MAURICE ESTEP AND LORRAINE S. ESTEP, HIS WIFE, dated 04/06/1984 and recorded on 04/23/1984 in Book 316, Page 268, in the CALVERT County Recorders Office.

PARCEL: 03-037223

1359346    Form # 1302
Address :6421 BAYSIDE RD, CHESAPEAKE BEACH,MD

```
KOI1 -  07/09/18                          QUEUE 0235 CLR BTB    12.11.54
BOR2 APPLID IC         BANK 005 REGN 254  CITY 0312 LN #■■■■■■
WAYNE MAURICE ESTEP                       PYMTS MADE    48 PAST DUE      477.64
6421 BAYSIDE RD                           DAYS LT       97 LT-OTH CHG     11.49
CHESAPEAKE BEACH MD    20732-4407         PST DUE 04/03/18 MISC FEE        0.00
                                          MATURES 00/00/00 **TOTAL**     489.13
                                          NXT ACC 07/09/18 PAYOFF     25,584.21
                                          INTEREST TYPE  1 DLR # 000000 LIABLE
LTR      CR AG      R-MAIL      FLD AG    COLLAT   2ND D/T-6421 BAYSIDE RD CHESAP
BANKRUPTCY                                NXT DUE 07/03/18 NXT AMT      477.64
HOME-BORROWER           000 000 0000      P-PAY        0.00 CUR BAL   24,955.00
OFFC-BORROWER           000 000 0000      LST PMT 03/06/18 LST AMT      250.00
HOME-COMAKER            000 000 0000      PTP DT  00/00/00 PTP AMT        0.00
OFFC-COMAKER            000 000 0000      NXT CNT 06/14/18 LAST CONTACT 00/00/00
CELL-BORROWER           ■■■■■■■■■■        003 003 002 001  LAST PTP KEPT
ACTION     REACTION     REASON      AMT              WHEN          REFERRAL
SCPD
       DATE   ACTN REAC RSN    DATE   ACTN REAC RSN    DATE   ACTN REAC RSN
       07/03  SCPD            06/14  SCPD             06/14  TLON
       06/14  SCPD            06/13  RSAD RSAD SCPD   06/13  OUTB MOCR SCPD
       06/13  SCPD            06/13  SCPD             06/12  SCPD
F1-FWD 2-BWD 3-ACTV 4-HIST 5-SCPD 6-BAL 7-STAT 8-INQMNU 9-PHONE 10-NAME 11-CODE
12-NXTAC 13-LTRS 14-LINK 15-QLST 16-PTP 17-USR 18-KO51 19-FTLO 20-KOQR 22-KOR9
                                      A C BK B3
```

BBT Confidential



**Retail: Loan Payoff**

## Confidential Information

07/09/2018

| | | |
|---|---|---|
| **Primary Name:** | ESTEP WAYM0000 | N/A |
| **Bank:** | ▓ | N/A |
| **Branch:** | ▓ | N/A |
| **Customer:** | ▓ | N/A |
| **Loan:** | ▓ | N/A |

| | |
|---|---|
| **Loan Type:** | 8 - LINE OF CREDIT |
| **Recovery Status:** | B - BANKRUPTCY |

| Payoff Information: | |
|---|---|
| Total Payoff | $25,584.21 |
| Good Thru | 07/09/2018 |
| Days Adjusted | 0 |
| Total Online Principal | $0.00 |
| Total Online Other | $0.00 |
| Total Current Perdiem | 3.93126 |

| Totals: | Payoff Balances | Current Balances | Effective Date Adjustments |
|---|---|---|---|
| Principal | $24,955.00 | $24,955.00 | |
| Interest | $587.72 | $587.72 | $0.00 |
| Insurance | $0.00 | $0.00 | $0.00 |
| Dealer Rebates | $0.00 | $0.00 | $0.00 |
| Late Fees | $11.49 | $11.49 | |
| Other Charges | $0.00 | $0.00 | |
| Miscellaneous Fees | $0.00 | $0.00 | |
| Minimum Interest | $0.00 | $0.00 | $0.00 |
| Extension Fees | $0.00 | $0.00 | |
| Termination Fees | $30.00 | $30.00 | $0.00 |
| Advance Fees | $0.00 | $0.00 | |
| Fee Rebates | $0.00 | $0.00 | $0.00 |